UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:05CV-00001-JHM

DAWN D. RIDEOUT                                                                PLAINTIFF

V.

HIDONG NGUYEN, M.D., et al.                                         DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' motion in limine and objections to Plaintiff's exhibits [DN 107]; on a motion in limine and objections to Plaintiff's witnesses [DN 108]; and on a motion in limine regarding the opinions of Dr. Sorabh Khandelwal [DN 109]. Plaintiff has filed responses to the motions [DN 118, DN 119, DN 120]. These matters are ripe for decision.

**I. Background**

Plaintiff, Dawn Rideout, filed this medical negligence action against the Defendants alleging that their failure to timely diagnose viral encephalitis has resulted in Plaintiff sustaining permanent and irreparable injuries. Plaintiff alleges that on December 17, 2003, she went to the Trover Clinic complaining of headaches and numbness in portions of her face and extremities. She also made follow up visits to the Regional Medical Center on December 21, 2003, December 30, 2003, and January 2, 2004, and Trover Clinic on December 27, 2003, December 28, 2003, December 31, 2003. Plaintiff alleges that her condition worsened over this period of time. According to Plaintiff, her family ultimately

took her to Ohio County Hospital on January 3, 2003, where she was diagnosed with viral encephalitis.

## II. Motion In Limine and Objections to Plaintiff's Exhibits [DN 107]

Defendants move to exclude seven exhibits listed by Plaintiff in her Exhibit List.

### A. *List of Incurred Medical Bills and Charges*

Plaintiff provided a list of medical expenses totaling $30,569.95. Defendants seek to exclude these medical expenses arguing that there is no proof in the record from which a jury could determine that the medical expenses referenced in Plaintiff's list are the result of the alleged negligence of the Defendants. Defendants argue that the medical expenses incurred were the result of Plaintiff's viral encephalitis, not the alleged negligence of the Defendants.

Plaintiff argues that she was seen on seven occasions at either Trover Clinic or Regional Medical Center with persistent symptoms which included headaches, numbness, dizziness, and slurred speech. Plaintiff maintains that the testimony of her experts will be that this diagnosis should have been made earlier and that if it had been made earlier, the Plaintiff's functional limitations and restrictions, and the nature and course of her treatment would have been markedly different. Plaintiff submits that these experts will testify that the medical charges and expenses incurred by this Plaintiff for the care and treatment of her viral encephalitis was caused by the negligent failures of the Defendants to timely diagnose this Plaintiff and to render appropriate treatment that would have eliminated the need for the expenses which she subsequently incurred. Plaintiff argues that while the admissibility of the medical bills will depend to some extent on the testimony of Plaintiff's treating and

expert physicians with regard to the reasonableness, appropriateness, and necessity of these medical bills, this is an issue of proof which the Plaintiff intends to meet at the time of trial.

Generally, malpractice defendants are liable for the medical expenses incurred because of the defendants' negligence. From a review of the case law, this appears to be a factual determination for the jury to make. See, e.g., Matthew Bender, Damages in Tort Actions, § 9.04; see also Ingram v. Katseres, 2001 WL 1117080 (N. D. Tex. September 14, 2001) (A plaintiff in a malpractice action should recover only for medical expenses specifically shown to result from the treatment made necessary by the negligent actors or omissions of the defendant, when such differentiation is possible.); Mitchell v. Haldar, 883 A.2d 32, 44 (Del. 2005 )("The expenses for each of the medical services incurred by the [Plaintiff] were admissible evidence based upon the testimony of [the Plaintiff's expert]. Whether the need for each of those medical services was proximately caused by [the Defendant's negligence], however, was a factual determination for the jury to make.") For these reasons, the motion by Defendants to exclude Plaintiff's medical bills is denied.

*B. Plaintiff's Exhibit 11 and Exhibit 12*

Defendants object to the admission of the chart/timeline of Plaintiff's treatment at Trover Clinic, Regional Medical Center and Ohio County Hospital. The exhibit lists the multiple dates which Plaintiff sought treatment at the Trover Clinic or the Regional Medial Center, the names of the physicians, a brief history of the complaints, and the diagnosis made on each of these dates. Defendants object to this chart/timeline on the grounds that while it includes a history and a diagnosis, it fails to include the patient's presentation and the

healthcare provider's finding for each of the visits. Defendants tender an alternative exhibit and submit that the combination of Plaintiff's and Defendants' charts more accurately reflects the patient's visits to the healthcare providers.

Plaintiff argues that the exhibit is accurate from the standpoint of dates, the facility and physician seen, the history provided and the diagnosis that was made. The Plaintiff states that the exhibit was not intended to be a complete verbatim recital of the entire medical record. Plaintiff suggests that in light of the fact that the exhibit is factually accurate, the exhibit should be permitted to be introduced. Plaintiff further suggest that Defendants can introduce their own exhibit setting out additional information they deem appropriate.

This exhibit appears to be a chart that summarizes the evidence in the medical records and Plaintiff's testimony. The Sixth Circuit has an "established tradition" of permitting the use of demonstrative exhibits that summarize evidence as an aid to the jury as long such a summary is "accompanied by a limiting instruction which informs the jury of the summary's purpose and that it does not constitute evidence." U.S. v. Bakke, 942 F.2d 977, 985-986 (6th Cir. 1991). And, although the Court may rule such a summary inadmissible if it is considered "too conclusory or inaccurate," the Defendants have not pointed the Court to any specific inaccuracies in the Plaintiff's summary. See, e.g., United States v. Paulino, 935 F.2d 739, 753 (6th Cir. 1991)(overruled in part for other reasons). The Court will permit the use of this exhibit as a demonstrative exhibit. Therefore, the Defendants' motion to exclude the Plaintiff's use of the chart/timeline is denied.

### C.  *Plaintiff's Exhibit 13 and Exhibit 14*

Defendants object to Exhibits 13 and 14 in the event the exhibits had been modified since Plaintiff originally provided them to Defendants.  Plaintiff represents that the Defendants have previously been provided with a copy of this exhibit.  Accordingly, Defendants have no objections to Plaintiff's Exhibit 13 and Exhibit 14, and the Defendants' motion to exclude them is denied.

### D.  *Plaintiff's Exhibit 15*

Defendants move to exclude a summary table attached to the report of Dr. Gilbert Mathis.  Plaintiff has withdrawn the listing of this exhibit and will not introduce it at trial.  Defendants' motion is therefore moot.

### E.  *Plaintiff's Exhibit 17*

Defendants' object to the introduction of photographs of Plaintiff, Dawn Rideout, on the basis that they have not been produced for the Defendants' inspection.  Defendants represent that when counsel questioned Plaintiff about these photographs, Plaintiff represented by letter that she did not intend to introduce the photographs.  Additionally, Defendants submit that they served Interrogatories and Requests for Production of Documents to Plaintiff on February 25, 2005, requesting among other things the production of all photographs.  Plaintiff did not produce the photographs in question.  Defendants contend that allowing Plaintiff to utilize exhibits that have not been provided to them at this late date prejudices the Defendants and would give the Plaintiff an unfair tactical advantage at trial.

In response, Plaintiff maintains that the photographs show nothing more than Plaintiff's appearance at various stages in her life, including her current appearance. Plaintiff states that copies of the photographs are being forwarded to the Defendants and, as such, there can be no prejudice in the introduction of these photographs. In light of the recent continuance of the trial, the Court declines to exclude the photographs. The Defendants' motion is denied.

### III. Motion in Limine and Objections to Plaintiff's Witnesses [DN 108]

Defendants move to exclude Dwight Rideout and Tanya Adams. Defendants argue that Plaintiff has failed to produce these witnesses for discovery depositions. Both witnesses' depositions were scheduled for June 23, 2008, but those depositions were cancelled because of witness unavailability. Defendants submit that Plaintiff's counsel has not provided any potential dates to depose these two witnesses. Defendants requests these witnesses be excluded unless they have been timely produced for a discovery deposition.

In response, Plaintiff represents that she has now provided Defendants with alternate dates in which the deposition of both Mr. Rideout and Ms. Adams can be taken. Plaintiff requests the Court deny the motion in limine to exclude arguing that both witnesses are fact witnesses and Defendants have suffered no prejudice by the rescheduling of these depositions. Given that alternate depositions dates have been provided to the Defendants, the motion in limine to exclude the testimony of Dwight Rideout and Tanya Adams is denied at this time.

## IV.  Dr. Sorabh Khandelwal

Defendants seek to exclude the testimony and opinions of Plaintiff's expert, Dr. Sorabh Khandelwal, that Defendant, Dr. John Ewing, an emergency room physician then working for Regional Medical Center violated the accepted standard of care and was negligent in his care and treatment of the Plaintiff on January 2, 2004.  Defendants argue that such opinions are not based on facts or data of a type reasonably relied upon by experts. Defendants represent that Dr. Khandelwal was disclosed as an expert by Plaintiff on March 1, 2006.  At that time, a copy of his written report setting out his opinions was provided. Defendants contend that the report was critical of only two of the Defendants, Dr. Hidong Nguyen, M.D. and Kellye Kirkpatrick.  The report did not mention a violation of the standard of care of Dr. John Ewing.

On September 11, 2007, Defendants took the discovery deposition of Dr. Khandelwal. Defendants represent that during this deposition they became aware for the first time that Dr. Khandelwal would also offer opinions regarding Dr. John Ewing.  Defendants submit that Dr. Khandelwal's new opinions regarding Dr. Ewing are based only on a conversation with Plaintiff's counsel, A.V. Conway, and are not based on his review of the medical records. Defendants argue that pursuant to Fed. R. Evid. 703, all opinions of Dr. Khandelwal regarding Dr. Ewing must be excluded.  Rule 703 provides that the facts and data relied upon by an expert must be of a type "reasonably relied upon" by experts.  Defendants argue that information from Plaintiff's attorney cannot form an adequate or competent basis for Dr. Khandelwal's opinions under Rule 703 because they are not the type of information that

physicians reasonably rely on.

Plaintiff disagrees arguing that there is no basis for excluding Dr. Khandelwal's opinions regarding the standard of care rendered by Dr. Ewing. In Dr. Khandelwal's original report, he concluded that:

> Looking at numerous clinic and ED visits, it is apparent that Ms. Rideout should have obtained an earlier diagnosis of viral encephalitis, at least on the 12/30 visit where she was seen by Ms. Kirkpatrick, Dr. Nguyen, on the following day, should have recognized a potential CNS infection and made appropriate arrangement to assess for that. There appears to be a lack of communication between the different hospital/clinic visits especially if the patient presents numerous times over a small time period.

(Khandelwal's Report at 3.) Plaintiff contends that she returned to the Regional Medical Center on the night of January 2, 2004, where she was seen in the emergency room for three hours by Dr. John Ewing. Plaintiff argues that Dr. Khandelwal concluded in his original report that there was a failure to diagnose by staff at the Regional Medical Center as early as December 30, 2003. According to Plaintiff, recognizing that the viral encephalitis should have been diagnosed as early as December 30 clearly carries with it the opinion that it also should have been diagnosed when she appears yet again at the Regional Medical Center on January 2 with the same, but more severe, symptoms and complaints.

Additionally, Plaintiff challenges Defendants characterization that Dr. Khandelwal somehow changed or added to his opinions based on information that he received from Plaintiff's counsel. According to Plaintiff, an examination of Dr. Khandelwal's testimony indicates that the only additional information that he elicited in his conversation from Plaintiff's counsel was that the Regional Medical Center is a larger hospital than Ohio

8

County Hospital as opposed to his initial belief that the transfer of Plaintiff on January 3, 2004, was made from a smaller hospital to a larger hospital. (Khandelwal Deposition at 15, 46-47.) Further, Plaintiff points to Dr. Khandelwal's deposition testimony which Plaintiff argues demonstrates his reason and justification for his opinions regarding Dr. Ewing's negligence:

> Q.  You were given a hypothetical from Mr. Franklin with regard to what Dr. Ewing testified to.
> I would ask you, in looking at the emergency room visit for January the 2nd of 2004, do you see any reference anywhere in that visit to where Dr. Ewing was considering viral encephalitis as one of the diagnoses?
>
> A.  There's no reference at all. There's a reference to areas of pathology, like cerebellar problems, et cetera, but there's no reference to viral encephalitis, and there's also no reference to – now, I don't – there's no reference to wanting to do a spinal tap and so forth.
> So, you know, the question, one question I have, is was that a dictation, or was that simply testimony?
>
> Q.  Well, let me ask you, solely from the standpoint of the medical records, irrespective of what the doctor subsequently said, does it appear to you that he made or considered making a diagnosis of viral encephalitis when he saw this patient on January the 2nd?
>
> A.  Doesn't appear so.
>
> Q.  Just looking at the medical records themselves, and accepting those records as the basis for his diagnosis and treatment of this patient, would just the records be indicative of a violation of the standard of care, considering all the other matters that you've referenced?
>
> A.  I think every visit from the 30th on should have been accompanied by a spinal – a spinal tap, a lumbar puncture.

(Khandelwal Deposition 44-45.)

First, a review of Dr. Khandelwal's entire deposition reveals that at the time he wrote

his report he originally believed that the transfer from the Regional Medical Center to the Ohio County Hospital was a transfer from a higher level of care facility to get the appropriate work-up and care, and not a transfer to a lower level of care facility. (Id. at 46.) Defendants do not challenge Dr. Khandelwal's current understanding of the transfer between the Regional Medical Center and the Ohio County Hospital. Further, after reviewing the entire deposition of Dr. Khandelwal, the Court finds that his opinion regarding the standard of care rendered by Dr. Ewing does not violate Fed. R. Evid. 703.

Second, under Fed. R. Civ. P. 26(a)(2)(B), an expert who is retained or specially employed must submit a report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor..." Fed. R. Civ. P. 37(c)(1) authorizes a district court to exclude information from trial that was withheld in violation of Rule 26 without "substantial justification," unless the failure to disclose was "harmless." Caudell v. City of Loveland, 226 Fed. Appx. 479, 481 (6th Cir. 2007). The advisory committee note to Rule 37 "strongly suggests that 'harmless' involves an honest mistake on the part of the party coupled with sufficient knowledge on the part of the other party." Borg v. Chase Manhattan Bank U.S.A., 247 Fed. Appx. 627, 637 (6th Cir. 2007) (quoting Vance v. United States, 1999 U.S. App. LEXIS 14943, *16-17 (6th Cir. 1999)).

Here, although Dr. Khandelwal's expert report may not have contained his opinions relating to Dr. Ewing's care of the Plaintiff, Dr. Khandelwal discussed his opinions on this

issue in his discovery deposition.[1] The record clearly shows that despite the Plaintiff's failure to comply with Rule 26(a), the Defendants had sufficient knowledge following Dr. Khandelwal's deposition that evidence related to these opinions would be elicited. Further, there is nothing in the record that suggests the Plaintiff's failure to comply with Rule 26 was intentional. Accordingly, the Court finds that the Plaintiff's failure to disclose such information in the expert report was harmless and declines to limit the testimony of Dr. Khandelwal as requested by the Defendants.

For these reasons, **IT IS HEREBY ORDERED** that the motions in limine filed by the Defendants [DN 107, DN 108, DN 109] are **DENIED**.

cc: counsel of record

---

[1] Dr. Khandelwal's deposition was taken on September 11, 2007. The discovery deadline was October 31, 2007. Dr. Khandelwal's opinions regarding the standard of care offered by Dr. Ewing was disclosed prior to the close of discovery.