## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO. 4:05CV-00001-JHM**

**DAWN D. RIDEOUT**                                               **PLAINTIFF**

**V.**

**HIDONG NGUYEN, M.D., et al.**                             **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the First Motion in Limine by Plaintiff, Dawn D. Rideout, to prohibit the introduction or reference to the fact that a portion of Plaintiff's medical expenses have been paid, the fact that Plaintiff has filed for and is receiving Social Security Disability Benefits, and the written reports of any expert witness that Defendant intends to call at the time of trial [DN 102]; on the Second Motion in Limine by Plaintiff to prohibit the introduction of certain testimony by Defendants' expert witnesses [DN 103]; on the Third Motion in Limine by Plaintiff to prohibit the introduction or reference to excerpts from medical books, treatises, journals, periodicals, and pamphlets identified in Defendants' list of exhibits [DN 104]; and on the Fourth Motion in Limine by Plaintiff to preclude and prohibit Defendants from calling as an expert witness, Dr. Wayne C. Myers, or any of the other experts disclosed in Defendants' supplemental disclosure of experts filed on June 2, 2008 [DN 105].  Defendants have filed their responses [DN 114, DN 115, DN 116, DN 117]. These matters are ripe for decision.

## I.  First Motion in Limine [DN 102]

Plaintiff moves to exclude the introduction or reference to the fact that a portion of her medical expenses have been paid, the fact that she has filed for and is receiving Social Security Disability Benefits, and the written reports of any expert witness that Defendant intends to call at the time of trial.

### A.  *Medical Expenses and Social Security Disability Benefits*

Plaintiff intends to introduce at the time of trial all medical expenses which have been incurred to date.  Plaintiff's position is that those medical expenses were incurred as a direct result of Defendants' negligence.  A substantial portion of the medical expenses have been paid to date.  Similarly, Plaintiff has filed for and is receiving Social Security Disability Benefits.  Plaintiff seeks to prohibit the introduction or reference to these facts.  See Burke Enterprises, Inc. v. Mitchell, 700 S.W.2d 789 (Ky. 1985); O'Byran v. Hedgepeth, 892 S.W.2d 571 (1995).  Under the collateral source rule, "a tortfeasor is not entitled to any credit against what he owes for payments of medical expenses or disability benefits paid by a collateral source to the tort victim pursuant to a contractual obligation owed to the victim from the collateral source . . . ."  Burke, 700 S.W.2d at 796.  Accordingly, the Defendants are not "entitled to introduce evidence at trial of such payments, except to corroborate other evidence, if there is any, that establishes malingering."  Id.  Plaintiff's motion in limine with respect to this issue is granted.

Defendants do not dispute the application of the collateral source rule, but instead argue that the collateral source rule does not permit the Plaintiff to recover amounts for

which she, nor the collateral source, were liable, such as amounts written off or forgiven by a healthcare provider.  See Thomas v. Greenview Hospital, Inc., 127 S.W.3d 663, 675 (Ky. App. 2004). The Court will permit the introduction of the full amount of the medical expenses billed.  If a verdict is returned in favor of Plaintiff, the Defendants may, if necessary, file a post-trial motion to reduce the amount of judgment after the trial pursuant to Thomas.

## B.  Written Report of Expert Witness

Plaintiff seeks to exclude any written report of any expert witness that Defendant intends to call at trial.  The written report of expert witnesses prepared in anticipation of trial are generally inadmissible because they are considered hearsay.  Wright v. Premier Elkorn Coal Co., 16 S.W.3d 570, 572  (Ky. App. 1999); Engebretsen v. Fairchild Aircraft Corp., 21 F.3d 721, 729 (6th Cir. 1994) (citing Fed. R. Evid. 702 & 703).  "Rule 703 allows a testifying expert to rely on materials, including inadmissible hearsay, in forming the basis of his opinion.  Rules 702 and 703 do not, however, permit the admission of materials, relied on by an expert witness, for the truth of the matters they contain if the materials are otherwise inadmissible."  Id. at 728.

Defendants agree that the Rule 26 reports of its or Plaintiff's expert witnesses are not admissible.  However, Defendants argue that the medical record and report prepared by Defendants' expert witness, Dr. Hal Corwin, is admissible just as other medical records and reports of the treating physicians are admissible.  Dr. Corwin, a neurologist, examined and evaluated the Plaintiff on July 28, 2006.  In addition to his examination, Dr. Corwin did an

3

Electroencephalography (EEG), which is a test that measures and records the electrical activity produced by the brain. Defendants argue that these reports are admissible pursuant to the Federal Rules of Evidence.

A review of Dr. Corwin's independent medical examination reveals that he conducted a "record review" from the following sources: The Trover Outpatient Clinic records, Regional Medical Center records, the Plaintiff's complaint, the expert witness disclosure, Ohio County Hospital, office records of Darby Cole, records of Eric Weisman, the Plaintiff's interrogatories, and Dr. Tom Toomy. From these records, Dr. Corwin recites Plaintiff's course of treatment based upon these records. The remainder of the independent medical examination report consists of Dr. Corwin's findings with respect to his actual examination of Plaintiff.

After a review of Dr. Corwin's report, the Court finds that the Examination Section, along with the EEG, are properly admitted as an exhibit provided Dr. Corwin testifies at trial. His examination of Plaintiff and findings related to the examination are not hearsay and therefore are properly admitted. However, Dr. Corwin's ten-page record review appears to rely on other opinions and reports from other sources. As a result, while Dr. Corwin can appropriately rely upon this information in forming the basis of his opinion, it is not properly admissible as an exhibit under Fed. R. Evid. 703.

## II.  Second Motion in Limine [DN 103]

Plaintiff seeks to prohibit the introduction of specific testimony from Defendants' expert witnesses.

### A.  Dr. Matthew Lee

Plaintiff moves to exclude the introduction of any opinions of Defendants' expert, Dr. Matthew Lee, other than those referenced and stated in Dr. Lee's deposition of December 11, 2007.  Plaintiff represents that Dr. Lee has testified that the focus of his testimony would be on the care and treatment provided by Dr. Hidong Nguyen who saw Plaintiff on December 31, 2003.  In Dr. Lee's deposition, he limited his opinions with regard to the care and treatment provided by Dr. Nguyen and offered no opinions with regard to the other named Defendants.  Plaintiff maintains that Dr. Lee's testimony should be limited to only those opinions concerning the care and treatment provided by Dr. Nguyen and he should not be permitted to come in and offer opinions concerning the care and treatment given by the other Defendants.

 Additionally, Plaintiff seeks to prohibit the introduction of any testimony from Dr. Lee as to whether Plaintiff has any permanent injury,  any permanent functional limitations and restrictions, any permanent pain and suffering, or any disability.

 Defendants respond that they timely disclosed Dr. Lee as an expert witness, provided an expert report, and produced Dr. Lee for a discovery deposition.  Defendants state that to the extent that Dr. Lee's signed report contains opinions that Plaintiff's counsel did not explore during the discovery deposition, Defendants submit those opinions are admissible as they were timely disclosed to Plaintiff in this matter.  Defendants also acknowledge that Dr. Lee testified that he was not going to offer any opinions or testimony regarding permanent injury, limitations and restrictions, pain and suffering, or any disability.

The Plaintiff's motion to limit the testimony of Dr. Lee is granted.  Dr. Lee testified at his deposition that he was only going to offer an opinion with regard to Dr. Nguyen's care. Specifically, when asked if he would also offer opinions with regard to Dr. Ewing and the hospital, Dr. Lee stated "No, sir.  My focus was going to be on Dr. Nguyen's care."  (Lee Deposition at 5-6.)  Thus, Dr. Lee's testimony is limited to his opinions concerning the care and treatment of Plaintiff by Dr. Nguyen.

### B.  Dr. Jack Allison

Plaintiff moves to exclude the introduction of any opinions of Defendants' expert, Dr. Jack Allison, other than those referenced in his deposition of October 18, 2007.  Plaintiff contends that Dr. Allison should be limited to opinions concerning Defendants, Dr. John Ewing, Kellye Kirkpatrick, or Regional Medical Center, and should not be permitted to offer opinions concerning the care and treatment given by any other Defendant.  Plaintiff also seeks to exclude any opinion by Dr. Allison that Dr. Darby Cole was unethical or that he behaved improperly because of Dr. Cole's willingness as Plaintiff's treating physician to testify that physicians at Trover Clinic and Regional Medical Center were negligent in the care and treatment provided to Plaintiff.  Plaintiff maintains that this opinion is not relevant and should be excluded pursuant to Fed. R. Evid. 402 and Fed. R. Evid. 403.

Defendants respond that they timely disclosed Dr. Allison as an expert witness, provided an expert report, and produced Dr. Allison for a discovery deposition.  Defendants state that to the extent that Dr. Allison's signed report contains opinions that Plaintiff's counsel did not explore during the discovery deposition, Defendants submit those opinions

are admissible as they were timely disclosed to Plaintiff in this matter.  Additionally, Defendants contend that Dr. Allison's deposition testimony was not limited to these three Defendants as Plaintiff would have the Court believe.

After a review of the deposition and expert report of Dr. Allison, the Court denies in part Plaintiff's motion in limine.  Contrary to Plaintiff's argument, a review of the deposition of Dr. Allison reflects that he testified in his deposition that he found no failure in the standard of care by any of the health care providers at Trover Clinic and Regional Medical Center, including Dr. Howard, Dr. Chumbley, Dr. Yamraj, Dr. Nguyen, Kellye Kirkpatrick, and Dr. Ewing.  (Allison Deposition at 33.)[1]  Additionally, Dr. Allison stated in his report that "I could not find any evidence whatsoever of malpractice by any of the providers encountered by Ms. Rideout from 17 December 03 through 02 January 04." (Allison Report at 1.)  Dr. Allison also indicated that "[i]t is my opinion that Dr. John Ewing and Kelly Kirkpatrick, and Trover Clinic and Regional Medical Center, acted well within the standard of care expected of reasonably prudent health care providers under the same or similar

---

[1] Q:   If I understood your testimony, there's no failure in the standard of care by Dr. Howard, Dr. Chumbley, Dr. Yamraj, Dr. Nguyen, all of whom saw her within a little more than two weeks.  There's no negligence or failure of the standard of care for the three times that this patient was seen at Regional Medical Center on the 21st, 30th, and on January 2.  But there is a failure of the standard of care of Dr. Cole who actually made the diagnosis on January 3.  Am I correct?  Is that what you're saying?

A:   You're correct up to the point where I think you left out two people that I don't find culpable.  That is Kellye Kirkpatrick.  I don't think that she is guilty of malpractice.  I don't think John Ewing is guilty, with either visit, of malpractice.

(Allison Deposition at 33.)

7

circumstances and nothing they did or did not do was a substantial factor in causing harm to the plaintiff, Dawn Rideout." (Allison Report at 2.)  Therefore, Dr. Allison may testify regarding any opinions referenced and stated in his deposition and his expert report.

With respect to Dr. Allison's opinions regarding Dr. Darby Cole's alleged unethical or improper behavior, Defendants agree to the exclusion of these opinions of Dr. Allison. Plaintiff's motion with respect to Dr. Allison's opinions regarding Dr. Cole is granted.

### C.  Dr. Eric Weisman

Plaintiff seeks to exclude any hearsay statement or opinions attributed to Dr. Eric Weisman which are not contained in Dr. Weisman's medical records.  Plaintiff states that it is anticipated that Defendants may seek to introduce statements made by Dr. Weisman who has not been listed as a witness at trial.[2]  Dr. Weisman is a neurologist who saw Plaintiff following her hospitalization at Ohio County Hospital on January 3, 2004.  Plaintiff maintains that the Defendants have represented that Dr. John Ewing, who last saw Plaintiff in the early morning hours of January 3, 2004, had a telephone conversation with Dr. Weisman in which he referred Plaintiff to Dr. Weisman and had discussions about the performance of a lumbar puncture.  Plaintiff contends that an examination of Dr. Ewing's medical records from Regional Medical Center do not reflect the content of any conversation with Dr. Weisman or any discussions regarding a lumbar puncture.  Accordingly, Plaintiff argues that since the alleged conversation is not referenced in any of the medical records, the

---

[2]Dr. Weisman has now been listed as a witness on Defendant's final witness list filed on February 19, 2008.

conversation should be precluded in its entirety.  At a minimum, Plaintiff requests that no one should be permitted to comment on any statements from Dr. Weisman if he is not called as a fact witness.

Defendants argue that testimony regarding Dr. Ewing's conversation with Dr. Weisman should not be precluded because it is not hearsay.  First, Defendants point out that the medical records prepared by Dr. Ewing dated January 2, 2003, do in fact reflect that he discussed the Plaintiff with Dr. Weisman.  (Exhibit E, Defendant's Response to Plaintiff's Second Motion in Limine.)  The medical record appears to indicate that Dr. Ewing not only discussed the Plaintiff with Dr. Weisman, but also that Dr. Ewing was transferring Plaintiff to Dr. Weisman as a patient at the Ohio County Hospital for treatment.  Dr. Ewing testified in his deposition taken on July 18, 2007, that he discussed the spinal tap with both Dr. Naimoly and Dr. Weisman, and that Dr. Ewing "asked Dr. Weissman [sic] before transferring the patient if he wanted me to get the spinal tap and he said no, that it may delay transfer and cause confusion as to where the results were, and so he told me to not get the spinal tap, to let him and his people take care of it at Ohio County." (Ewing Deposition at 11.) Dr. Ewing further testified that he discussed the possibility of encephalitis with both Dr. Weissman [sic] and Dr. Naimoly."  (Id. at 37.)  Dr. Ewing also testified that he discussed performing a lumbar puncture with Dr. Weisman and he told Dr. Ewing that he wanted to wait. (Id. at 38.)  Further, the medical records prepared by Dr. Darby Cole, Plaintiff's treating physician, on January 3, 2004, documents the contact by Dr. Ewing with Dr. Weisman: "Last p.m. when her mental status worsened, she went back to the Emergency Department and the

ER doctor there made contact with Dr. Weisman and after considering all the options she was transferred over to Ohio County for further evaluation and treatment." (Dr. Cole, History of Plaintiff at 1.)

Defendants argue that the issue in the case at bar is whether Dr. Ewing's care of the Plaintiff was reasonable. According to Defendants, Dr. Ewing felt that the patient's presentation was such that she should be evaluated by a neurologist. As a result, he contacted Dr. Weisman who agreed to accept Plaintiff, discussed the patient, her history, diagnosis and diagnostic tests. The patient was then transferred to Dr. Weisman's care. Defendants contend that this testimony is not hearsay. Defendants argue that the substance of the conversation with Dr. Weisman will be offered to show what information Dr. Ewing had and explain why he took the actions he did. Defendants contend that the statements are not being offered to prove the truth of the matter asserted but to show what information Dr. Ewing had before him and to explain why he took the actions he did. See Browne v. Signal Mountain Nursery, 286 F. Supp. 2d 904, 924 (E.D. Tenn. 2003) ("The statements Plaintiff refers to were created by employees of SMN as part of an investigation conducted by David and Laurel Steele into the sexual harassment allegations made by Plaintiff. They were admitted not to prove the truth of the matters asserted within them, but to show what information the Steeles had before them during the investigation and to explain why they took the actions they did.")

First, contrary to Plaintiff's argument, the fact that a conversation took place between Dr. Ewing and Dr. Weisman and that Dr. Ewing sought to transfer Plaintiff to a neurologist

is not hearsay.  See Field v. Trigg County Hopsital, Inc., 386 F.3d 729, 735 (6th Cir. 2004).

Additionally, there is support in the record that the conversation took place.  The medical

records confirm that Dr. Ewing and Dr. Weisman had a conversation regarding Plaintiff and

that, as a result, of that conversation "she was transferred over to Ohio County for further

evaluation and treatment." (Dr. Cole, History of Plaintiff at 1.)

Second, the question before the Court is whether the specific statements allegedly

made by Dr. Weisman are properly admitted through the testimony of Dr. Ewing.  In Field

v. Trigg County Hospital, Inc., 387 F.3d 729, 737 (6th Cir. 2004), the Sixth Circuit held that

statements of Vanderbilt physicians that the defendant physician was "doing everything

appropriately" and that "they would not do anything different" which were admitted through

the defendant's testimony  were hearsay and should have been excluded.  Id.  Specifically,

at the trial in Field, the defendant physician was permitted to testify that during his course

of treating the plaintiff, he had called and sought the advice of an emergency room doctor

and toxicologist at the Vanderbilt Medical Center.  He was also permitted to testify as to

what the Vanderbilt physicians said over the telephone.  According to the defendant, the

Vanderbilt emergency room physician and toxicologist told him that he was "doing

everything appropriately," that "they would be doing the same thing." The Sixth Circuit held

that:

> The fact that a conversation took place between Dr. Anderson and the
> Vanderbilt physicians is not hearsay, and the simple fact that a consultation
> took place could have been elcited easily by Defendant's counsel without
> revealing the substance of the Vanderbilt physicians' responses. . . . Therefore,
> the only possible purpose for taking the additional step of telling the jury what

11

was allegedly said by the Vanderbilt physicians was to expose the jury to the substance of those statements and persuade the jury of their truth – namely, that Dr. Anderson was "doing everything appropriately." The statements were hearsay because they went well beyond conveying that Dr. Anderson sought out a consultation to the entirely self-serving purpose of exposing the jury to the approving words of two purported experts from a purportedly esteemed medical institution.

Id. at 735.

After a review of the case law, the Court finds that it is entirely proper for Dr. Ewing to testify that he had a conversation with Dr. Weisman concerning the care and treatment of Plaintiff; that he discussed a spinal tap and lumbar puncture with Dr. Weisman and discussed the possibility of encephalitis; and that, as a result of the conversation, he did not perform a spinal tap or lumbar puncture and transferred her care to Dr. Weisman at the Ohio County Hospital where Plaintiff would undergo those diagnostic tests. However, the specific content of Dr. Weisman's responses is not appropriately introduced through the testimony of Dr. Ewing pursuant to Field. Dr. Weisman, if called at trial, will have to be asked this information. Thus, Plaintiff's motion with regard to this issue is granted in part and denied in part.

### III.  Plaintiff's Third Motion in Limine [DN 104]

Plaintiff seeks to prohibit the introduction or reference to excerpts from medical books, treatises, journals, periodicals, and pamphlets identified in Defendants' list of exhibits. Specifically, Plaintiff seeks to exclude Exhibits 20(a) through 20(o). First, Plaintiff argues that these exhibits cannot be marked as exhibits pursuant to Fed. R. Evid. 803(18). Fed. R. Evid. 803(18) provides that the following are not excluded by the hearsay rule:

> To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice.  If admitted, the statements may be read into evidence but may not be received as exhibits.

In accordance with Rule 803(18) none of the articles listed by Defendants can be marked or received as an exhibit.

Second, Plaintiff maintains that any reference to these exhibits should be excluded because the Defendants did not reveal their reliance on them during discovery.  According to Plaintiff, in Plaintiff's Request for Production of Documents propounded to Defendants, the Plaintiff requested that the Defendants "[p]roduce full and complete copies of all articles, books, publications, or periodicals, or other learned medical treatises of any type and/or nature, that you or any expert witness contend is authoritative on any subject which you intend to introduce expert opinions on at the trial of this action."  Defendants responded that "[t]his Defendant is not currently aware of any such articles, books, journals, etc, other than as may be disclosed by the expert witnesses in their reports or during discovery depositions."  Plaintiff argues that since these exhibits were not timely produced in accordance with Plaintiff's Request for Production, Defendants should not be permitted to rely upon these exhibits at trial.

Defendants argue that they timely disclosed these publications on February 19, 2008, in compliance with the Court's scheduling Order of September 10, 2007, which provided that "counsel for the parties shall file a final list of witnesses and exhibits, including charts,

drawings, reproductions, tangible objects and documents, which are to be used in any manner during trial, regardless of whether or not the item is to be offered into evidence." [DN 54.] Defendants represent that copies of these publications were forwarded to Plaintiff's counsel at that time. Defendants state that while their expert witnesses arrived at their opinions without relying on these articles, Defendants interpreted the Court's Order to include the disclosure of documents that may be called to the attention of an expert witness upon cross-examination.

By letter dated February 25, 2008, Plaintiff's counsel acknowledged receipt of the articles and further indicated that "though they are not exhibits, I do appreciate receiving the copies. We will forward a list and copies of the articles that we may use in the near future." The Defendants then served Interrogatories and Requests for Production of Documents to Plaintiff, requesting the production of any treatise, publication, pamphlet, magazine, article or literature that Plaintiff will introduce at trial, rely upon in cross-examination or impeachment of any witness. In response, Plaintiff provided a list identifying in part, "[e]ach and every publication previously identified and provided to Plaintiff by Defendant as a part of Defendant's pretrial compliance." Additionally, Plaintiff listed five additional publications.

Given that Defendants represent that their expert witnesses did not rely on these articles, these exhibits may not be inquired into on the direct examination of their expert witnesses. However, since Plaintiff had the list and copies of the articles since February 19, 2008, and has in fact listed them as possible publications she may rely on at trial, the Court

finds that the Plaintiff has had sufficient knowledge of these articles.  Additionally, there is nothing in the record that suggests that Defendants' failure to comply with Rule 26 was intentional.  See Borg v. Chase Manhattan Bank U.S.A., 247 Fed. Appx. 627, 637 (6th Cir. 2007).  Accordingly, the Court finds that the Defendants' failure to disclose such information until February 19, 2008, was harmless and declines to limit the use of these articles on cross examination of the Plaintiff's expert witnesses.

For these reasons, the Court grants in part and denies in part Plaintiff's motion in limine.  The articles may not be introduced as exhibits pursuant to Fed. R. Evid. 803(18), but may be used by the parties on the cross-examination of an expert witness.

### IV.  Fourth Motion in Limine [DN 105]

Plaintiff moves to preclude Defendant from calling as an expert witness, Dr. Wayne C. Myers, or any of the other experts disclosed in Defendants' supplemental disclosure of experts filed on June 2, 2008.  Plaintiff contends that Defendants did not timely identify Dr. Myers and the other experts identified in the disclosure.  Plaintiff moves the Court to exclude Dr. Myers and the other newly listed witnesses:  Dr. Eric Weisman, Dr. Bruce Burton, Dr. C.E. Bea, Dr. Janni Pathi, Dr. Fred Tuttle, Dr. Patrick Lavin, Lee Ann Keller, Faron Brothers, Vickie Drake, Joe House, Dr. Mark Fitzmaurice, Thomas Wayne Edwards, Jennifer Nelson, Scott Stevenson, Stephanie Taylor, Shaun Vickery, Ronald Byrum, Dr. Tom Tommy, Susan Driskill, Dr. Laura Wolff, Dr. Joe Bakker, Dr. Wade Boggs, and Dr. Grady Burleson.  (Defendants' Supplemental Disclosure of Experts, June 2, 2008.)  Defendants submit that they have not violated any Court Order and that all of the experts identified in

15

the supplemental disclosure of June 2, 2008, were timely identified, and as such, should be allowed to testify, if called as a witness.

## A. Procedural History

Defendants originally identified Dr. Matthew Lee, Dr. Jack Allison, and Dr. Hal Corwin as their experts. The trial of this matter was originally set for April 15, 2008. On February 19, 2008, Defendants filed their Final List of Witnesses listing, among others, Lee Ann Keller, Faron Brothers, Vickie Drake, and Joe House, nurses at the Trover Clinic; Dr. Eric Weisman, Dr. Tom Toomy, Dr. Mark Fitzmaurice, and Dr. Patrick Lavin, treating physicians of Plaintiff; and Thomas Wayne Edwards, Jennifer Nelson, Scott Stevenson, Stephanie Taylor, Shaun Vickery, Ronald Bryum, and Susan Driskill, treating health care providers of Plaintiff. Plaintiffs object to these witnesses being permitted to testify at trial.

By Order dated March 17, 2008, the Court denied Defendants' motion in limine to exclude the report of Dennis Sprague and granted Defendants' alternative request to take the deposition of Dr. Sprague [DN 93]. The Court continued the trial and referred the matter to the Magistrate for scheduling. Specifically, the Court stated that:

> The Defendants may take the deposition of Dr. Sprague. Defendants may question him on his opinions and conclusions. Plaintiffs may do likewise and utilize him as an expert at trial. The Defendants may have the Plaintiff evaluated by a neuropsychologist. The Defendants shall supplement their expert disclosures to include an expert in the field of neuropsychology and the Plaintiff may take the deposition of that expert.
>
> This matter is referred to the Magistrate for scheduling, which, of course, will include a new trial date.

[DN 93]. By Order entered March 21, 2008, the Magistrate set the matter for trial on August

16

12, 2008.  Additionally, the Magistrate also ordered that "[n]o later than June 2, 2008, counsel for the Defendants shall disclose the identify of any person who may be used at trial to provide expert testimony and shall submit written reports from any expert witnesses who are retained or specifically employed as required by Fed. R. Civ. P. 26(a)(2)(A) and (B)." [DN 95]

In compliance with this Court's March 17, 2008, Order, Defendants had Plaintiff evaluated by Dr. Richard L. Edelson on April 24, 2008.  Defendants have taken the deposition of Dr. Sprague and the discovery deposition of Dr. Edelson is scheduled for August 4, 2008.  Plaintiff states that she does not object to Defendants calling Dr. Edelson as a witness at trial since the evaluation by Dr. Edelson and the use of him as an expert witness was authorized by the Court's Order of March 17, 2008.

On June 2, 2008, Defendants filed their supplemental disclosure of expert witnesses and listed all the witnesses listed above, plus Dr. Wayne Myers, Dr. Bruce Burton, Dr. C.E. Bea, Dr. Janni Pathi, Dr. Fred Tuttle, Dr. Laura Wolff, Dr. Joe Bakker, Dr. Wade Boggs, and Dr. Grady Burleson.

### B.  Dr. Wayne Myers

On June 2, 2008, Defendants filed their supplemental disclosure of expert witnesses listing not only Dr. Richard Edelson, a board certified neuropsychologist, but also Dr. Wayne Myers, a radiologist.  The Defendants tendered the reports of both Dr. Edelson and Dr. Myers.  Dr. Myers read the CT scan of Plaintiff on January 3, 2004 and Defendants have also requested him to review other films in late March.  Dr. Myers has issued a report in which

17

he has formed opinions as to whether Plaintiff had viral encephalitis based upon his review of all the radiology films of Plaintiff taken during the course of this litigation.

Plaintiff complains that the March 17, 2008, Order did not provide Defendants an opportunity to identify Dr. Myers as an additional expert to be called to testify at trial. Furthermore, Plaintiff argues that nothing in Defendants' original disclosures referenced Dr. Myers or even suggested that he was going to offer an opinion.  Dr. Myers did not examine the majority of films taken of Plaintiff until sometime in 2008.   Plaintiff maintains that the identification of Dr. Myers at this time is well outside the time for identification of expert witnesses and not consistent with this Court's prior Order.

The Court agrees.  The March 17, 2008, Order by this Court did not provide Defendants an opportunity to identify an additional Rule 26(a)(2)(B) expert to be called to testify at trial.  Dr. Myers was not retained by Defendants to counter the testimony or report of Dennis Sprague.  While the Magistrate's Order entered March 21, 2008, appears to be broad in scope, that Order must be viewed in light of the parameters set forth in this Court's March 17, 2008, Order.  Thus, the disclosure of Dr. Myers as a Rule 26(a)(2)(B) expert is not timely.  Accordingly, Dr. Myers will be permitted to testify only regarding his role in the care and treatment of the Plaintiff while she was at the Ohio County Hospital.  Dr. Myers will not be permitted to express any opinion derived from his review of information or reports outside of his treatment of Plaintiff.

### C.  Other Newly Listed Witnesses

Defendants' supplemental disclosure also included as expert witnesses the names of

all of Plaintiff's treating physicians and healthcare providers known to Defendants.  Plaintiff argues that it is highly detrimental to the Plaintiff for the Defendants to now be permitted to identify and call these newly listed experts without any compliance with Fed. R. Civ. P. 26. Plaintiff contends that she has never been provided with witnesses qualification or any opinions they may offer if called to testify at trial.

Defendants represent that these treating physicians and healthcare providers are not retained; but instead were disclosed in the event they were called as a fact witness to testify regarding their care and treatment of Plaintiff, they could also give opinion testimony regarding their findings, Plaintiff's diagnosis, and Plaintiff's prognosis.

Defendants also represent that the majority of these treating physicians and healthcare providers were previously identified in this matter as witnesses or person with knowledge, and the identification of these individuals as such elicited no previous objection from Plaintiff's counsel.[3]  Additionally, Defendants' maintain that the initial Disclosure of Expert Witnesses served on Plaintiff's counsel on November 14, 2005, listed "Any and all other physicians and health care providers who have participated in the care and treatment of Dawn Rideout."

Defendants argue that all of the treating physicians and healthcare providers were previously known to Plaintiff and her attorneys, their names are all contained in the medical records of the Plaintiff which reflects their care and treatment and opinions, and are not a

---

[3]The record does not contain most of the Rule 26 disclosures by the parties.

surprise.  Further, Defendants correctly note that a Rule 26(a)(2)(B) report from these type of expert witnesses is not required.  <u>Farris v. Intel Corporation</u>, 493 F. Supp. 2d 1174 (D. N.M. 2007)("Rule 26(a)(2)(A) clearly controls disclosure requirements for 'hybrid' fact/expert witnesses, the most obvious example being a treating physician.  The commentary to Rule 26 explains that the report required by Rule 26(a)(2)(B) does not apply to treating physician." <u>Id.</u> at 1179.)  Additionally, some of these witnesses have been listed by Plaintiff and/or previously deposed by Plaintiff.  Defendants further represent that four of the treating physicians disclosed – Dr. Laura Wolff, Dr. Joe Bakker, Dr. Wade Boggs, and Dr. Grady Burleson – did not become known to defense counsel until he received Plaintiff's pharmacy records from Plaintiff's counsel on March 12, 2008.

After a review of the record and given that all these witnesses are fact witnesses and have served as a treating physician or health care provider of Plaintiff, the Court finds that Defendants' failure to specifically list each witness does not prejudice the Plaintiff.  Plaintiff is aware of these witnesses, has deposed some of the witnesses, and has listed others as witnesses for the Plaintiff.  Accordingly, the Court denies the Plaintiff's motion to exclude these witnesses.  The witnesses will be permitted to testify regarding their role in the care and treatment of Plaintiff.  However, these witnesses are limited to expressing opinions directly related to their actual care and treatment of Plaintiff.

For the reasons set forth below, **IT IS HEREBY ORDERED** that the motions in limine by Plaintiff [DN 102, DN 103, DN 104, DN 105] are **GRANTED IN PART AND**

**DENIED IN PART** consistent with this Opinion.


cc: counsel of record

21